# Richmond.

## JAMESON V. JAMESON'S ADM'X & ALS.

### APRIL 18th, 1889.

Absent, Richardson, J.

1. WILLS—*Bequests—Construction.*—Testator bequeathed a legacy in trust "for his daughter E. for life, and after her death to be equally divided amongst her surviving children and the issue of such as may be dead, such issue taking *per stirpes* and not *per capita,*" etc. During her life time, and after testator's decease, one of her sons died, leaving one daughter, who also died during E.'s life time without issue, but leaving as her sole distributee her mother: *held,* under the will the issue of E.'s children took as original legatees and not by substitution to the rights of their deceased parent, as the vesting of the remainder in the children of E. or their issue depended on their surviving the testator, not E., and therefore the administratrix of the granddaughter of E. was entitled to share in the legacy.

2. APPEAL—*Statutes of limitation.*—To a decree that adjudicates the principles of the case, though interlocutory because it leaves something in the cause to be done by the court, an appeal lies, and to such decree the statutory period of limitation is inapplicable.

3. IDEM—*Case at bar.*—On bill to settle testator's estate, construe his will, and compel payment of a legacy, there is a decree adjudging complainant entitled to a fixed sum of such legacy, and directing the cause to be proceeded with conformably to its views in order to collect the funds and pay the legacies, is an interlocutory decree, though appealable.

Appeal from three decrees of circuit court of Culpeper county, rendered April 2, 1883, September 17, 1887, and June 4, 1888, respectively, on the petition filed, in a pending suit to settle the estate of William Major, deceased, by Mrs. Kate

Jameson as administratrix and distributee of the estate of her daughter, Eliza Corbin Jameson, deceased, for the construction of William Major's will and the payment of her intestate's share of a legacy thereunder. The decree was in favor of the petitioner, and Philip L. Jameson, one of the legatees, filed a bill to rehear the decree of April 2, 1883, but it was dismissed and he appealed. Opinion states the case.

*John W. Bell, Green & Miller,* and *G. D. Gray,* for the appellant.

*J. C. Gibson* and *A. McD. Green,* for the appellees.

LACY, J., delivered the opinion of the court.

The case is as follows: William Major, the elder, died in 1848, having first made and published his last will and testament, as to the fourth clause of which this controversy has arisen, by which he made provision for his daughter, Elizabeth T. C. Jameson, for her life, and, after her death, for her surviving children and the issue of such as might be dead.

The life-tenant died in 1871, and in 1883 the appellee, Kate Jameson, filed her petition in the chancery cause then pending in the circuit court of Culpeper for the settlement of William Major's estate, the object of which petition was to have a proper construction of the said fourth clause of his will. As much of this clause as is necessary to be stated is as follows: "4th Clause. I give to my executors hereinafter named, or to that one who for the time being shall qualify and act as such, the sum of six thousand dollars, in trust for the sole and separate use of my daughter, Elizabeth T. C. Jameson, wife of John Jameson, for and during her life, and *after her death* the same is to be equally divided *amongst her surviving children* and the *issue of such as may be dead, such issue taking per stirpes* and not *per capita*," &c.

. The admitted facts are that "William Major, Sr., died in the year 1848; Elizabeth T. C. Jameson died in the year 1871. At the death of William Major, Sr., Corbin D. Jameson, a son of Elizabeth T. C. Jameson, was living. Corbin D. Jameson died in 1864, leaving a child, Eliza Corbin Jameson, surviving him, who died in 1865."

The said Elizabeth T. C. Jameson had four children: Corbin D. Jameson (who married the said petitioner, Kate Jameson), John W. Jameson (who survived his mother and died without issue and intestate), Eliza Jameson (who married J. J. Porter and died in 1859, leaving no child), and Philip L. Jameson, the appellant.

In her said petition Kate Jameson claimed to be entitled to one-third of the said legacy of six thousand dollars, as administratrix and distributee of her said child, Eliza Corbin Jameson. By the decree of April 2d, 1883, she was declared to be entitled to one-third of the said legacy, with interest from the date of the death of the said life tenant; the same adjudged to be the true construction of the said fourth clause, and all future proceedings in the cause were directed to be in accordance with said construction.

In March, 1886, Philip L. Jameson filed his petition in said cause for a rehearing of the said decree of April, 1883. On the 17th of September, 1887, the prayer of this petition was denied and the petition dismissed. And on the 4th of June, 1888, a decree was rendered directing the receiver to collect certain funds in the cause, and pay over to Kate Jameson the said one-third part of the said six thousand dollars; whereupon the appellant applied for and obtained an appeal to this court.

The first question to be here determined arises upon the motion of the appellee, Kate Jameson, to dismiss the appeal as improvidently awarded, upon the ground that the decree of the 2d of April, 1883, was a final decree as to the matter in hand, and, two years having elapsed before an appeal was

applied for, the statute of limitations barred the appeal. This question presents neither novelty nor difficulty. As was said by Staples, J., in *Ryan* v. *McLeod*, 32 Gratt., 376: "According to the uniform decisions of this court, a decree which disposes of the whole subject, *gives all the relief that is contemplated*, and leaves nothing to be done by the court, is only to be regarded as final. (*Van-Meter's Ex'ors* v. *Van-Meter*, 3 Gratt., 142; *Harvey* v. *Bransom*, 1 Leigh, 108.) On the other hand, every decree which leaves anything in the cause to be done by the court is interlocutory as between the parties remaining in court." In the language of Judge Baldwin in *Cocke* v. *Gilpin*, 1 Rob. R., 20: "When the further action of the court in the cause is necessary to give completely the relief contemplated, then the decree upon which the question arises is to be regarded not as final, but as interlocutory." The rule laid down in *Cocke* v. *Gilpin* has been repeatedly recognized by this court, and is now the established doctrine. *Fleming* v. *Bolling*, 8 Gratt., 292; *Ambrose's Heirs* v. *Keen*, 22 Gratt., 769, 774; *Rawlings* v. *Rawlings*, 75 Va., 76; *Elder* v. *Harris*, *Id.*, 68; *Battaile* v. *Maryland Hospital*, 76 Va., 63; *Paul* v. *Ficklin*, *Id.*, 292; *Johnson* v. *Anderson*, *Id.*, 766; *Wright* v. *Strother*, *Id.*, 857; *Miller* v. *Cook*, 77 Va., 806; *Norfolk Trust Co.* v. *Foster*, 78 Va., 413; *Cralle* v. *Cralle*, 80 Va., 12; *Jones* v. *Turner*, 81 Va., 709; *Parker* v. *Logan*, 82 Va., 376.

An appeal will lie to this court from a decree adjudicating the principles of a cause, although the same may not be a final decree (sec. 3454, Code of Va.), and an appeal also lies from a final decree. So that a party may appeal at once from a decree settling the principles in a cause against him, or he may, at his option, await the final decree in the cause and then appeal. There is no limitation upon the time wherein an appeal will lie from an interlocutory decree settling the principles of the cause, such running only as against the final decree, the statute providing under the law now in force that "no petition shall be presented for an appeal from any final decree which shall

have been rendered more than one year before the said petition is presented." Sec. 3455, Code of Virginia. The decree of April 2d, 1883, was a decree which adjudicated the principles of the cause, and from it, as such interlocutory decree adjudicating the principles of the cause, the appellant might have appealed, but he was not barred by his failure to do so until the final decree had been rendered in the cause.

By the said decree of April 2d, 1883, no relief was granted, no money decreed to be paid; something was left for the court to do, and that was to decree the relief prayed for, and that was not done until the 4th of June, 1888, and the appeal was allowed in September following, and was within the statute, which at that time was two years. Code of 1873, sec. 17, ch. 178. The motion to dismiss the appeal must therefore be overruled.

The error assigned by the appellant to the decree of April, 1883, is that the circuit court erred in its construction of the fourth clause of the will of William Major, Sr., in decreeing that Kate Jameson, as administratrix of her said child, became entitled to one-third part of said legacy of six thousand dollars, with interest from the date of the death of Elizabeth T. C. Jameson, and insists that the rule which reads a gift to survivors simply, as applying to objects living at the death of the testator, is confined to those cases in which there is no other period to which survivorship can be referred, and that where such gift is preceded by a life or other prior interest, it takes effect in favor of those who survive the period of distribution, and of those only; citing Jarman on Wills, 5th Amer. ed., Vol. 3, p. 588; *Van Tillburgh* v. *Hollingshead,* 14 N. J. Eq., 32; *Williamson* v. *Champerlain,* 10 N. J. Eq., 373; *Slack* v. *Bird,* 23 N. J. Eq., 328; *Hill* v. *Rockingham Bank,* 45 N. H., 270; *Sinton* v. *Bird,* 190 St., 30; *Blatchford* v. *Newberry,* 99 Ill., 77. That when a testator uses the words " my surviving children," the court should determine that he meant to refer to those surviving him, but when he refers to the surviving children of

another, he should be held to refer to those only who survive such other.

This question is one of intention, and the cardinal rule is to collect the intention of the testator from the whole will taken together, without regard to anything technical, and if the intent be lawful—that is, does not create perpetuities, or violate any rule of law—then the courts will give it effect. Words of survivorship, in cases where these come in question, are to be referred to the period of the death of the testator, unless some contrary intent appears. *Randolph* v. *Wright*, 81 Va., 611, 612; *Hansford* v. *Elliott*, 9th Leigh, 79–94; *Newlin* v. *Ayscough*, 19 Ves., 536; 2 Jarman on Wills, 736, 738, 740, 741; *Toafe* v. *Cannon*, 10 H. of L. Cas., 78; *Stone* v. *Lewis*, 5th S. E. R., 282. The bequest to my daughter for and during her life, and after her death the same to be equally divided amongst *her surviving children*, standing alone, provides for the children of the life tenant, and for them only who survive their mother. But the words, "and the issue of such as may be dead, such issue taking *per stripes*, and not *per capita*," raise a question of some difficulty, and the precise question appears to have been decided not always uniformly.

When the payment of a legacy is postponed to a period subsequent to the decease of the testator, if futurity is annexed to the substance of the gift, the vesting is suspended, but if it appears to relate to the time of payment only, it vests *instanter*. If the bequest is to a person at the age of twenty-one years, or at the end of a definite period after the death of the testator, or is made contingent upon the happening of some future event at the death of the life tenant before the death of the legatee, the vesting, not the payment merely, is deferred, and consequently, when the legatee dies before the period ends, or the contingency happens, the legacy fails. It would be otherwise, obviously, if the legacy should be given in the first instance to the legatee and then payment postponed; and when the question arises upon the construction of a clause substitut-

· ing the children of legatees who die before the period of distribution and enjoyment, if there are express provisions requiring the children thus substituted to survive in like manner · such period or event, the rule would be the same as to them. But that is not this case. Here we have no express requisition that the children thus substituted shall survive such period; and the question is, whether the substituted gift is by necessary intendment to be construed as applying only to such issue as may happen to be living at such period, or whether the issue surviving the parent are absolutely entitled; in other words, whether the gift to the issue is by implication subject to the same contingency of survivorship as the gift to the parents.

Before any adjudication upon this, Mr. Jarman says, the prevalent notion seems to have been that in such cases it was not allowable to engraft on the gift to the issue an implied qualification, in order to assimilate their interest to that of their parents. V. C. Wood, observing *In re* Wilman's Trusts, 1 Johnson & Henning, 302, which was approved by Turner, L. J., *in re* Pell's Trust, 3 DeG., F. & J., 293 : " It is said that there is no satisfactory reason why a condition of survivorship should attach to a parent and not to a child, a remark with which I cannot altogether agree, for there is a very considerable difference in the positions of parents and their issue. It is intelligible that a gift to children should be limited to those who survive the tenant for life, there being a gift over to their issue; but, in the case of issue, why a share should be distributed among surviving issue, giving nothing to the representatives of those who may be dead, is not so clear. If all are to participate, any of them, in making arrangements on marriage or otherwise, may rely upon this, that should he die before the share falls in his family will take it. This observation does not apply to the case of children under a condition that they must survive the tenant for life, with substituted gifts to issue, because, notwithstanding the condition of survivorship, their families are provided for. On the construction

that would limit the issue entitled to those who survive the tenant for life, the objects of the testator's bounty are placed in a position which is not such as the testator would desire. To these considerations must be added the inclination of the court to avoid the suspense of shares as far as can be done consistently with the expressed intention."

These considerations have often been held to outweigh the authority of contrary decisons, and it is now settled that children are not by implication required to survive the period of distribution as expressed with regard to their parents, in whose place they stand, whether the gift to the issue be original, as when it is to such of a class of legatees as survive the period of distribution and the issue of such as are then dead, or strictly substitutional—that is, divesting a previous vested gift to the parent.

In the late case of *Arthur Martin* v. *Elizabeth Holgate*, decided in the House of Lords in 1866 (English and Irish Appeals, L. R., Vol. I., p. 175), the lord chancellor (Lord Cranworth) said: " There has been a conflict of decisions on this question, and I do not hesitate to say that in the course of the argument, and even since, my mind has from time to time considerably fluctuated. I have come to the conclusion that the appellant is right." The decision by the Master of the Rolls is reported in 34 Beavan, 79, *Holgate* v. *Jennings*. The testator, by his will, gave the rest, residue, and remainder of my estate and effects, in trust, to pay over the annual proceeds thereof to my said dear wife, for and during the term of her natural life, and from and immediately after her decease to distribute and divide the whole of my said residuary estate amongst such of my said four nephews and two nieces (naming them) as shall be living at the time of her decease, in equal shares; but if any or either of them *should then be dead, leaving issue*, then it is my will and meaning that such issue shall be entitled to their father's and mother's share, but in equal proportions.

What happened was that the wife survived her husband, and at the death of the testator all these four nephews and nieces were living. Two of the nephews died during the lifetime of the tenant for life without leaving issue. Another of them, Edward Jennings Martin, died during the lifetime of the widow, leaving a daughter, Augusta Mary Martin, who afterwards died an infant, also in the lifetime of the testator's widow. So that, at the death of the widow, only one nephew and two nieces were living.

The Master of the Rolls decided that the property became divisible into three parts, and went to the surviving *nephew and two nieces;* to which the representatives of Augusta Mary Martin excepted and appealed.

The decision of the Master of the Rolls was sustained by the authority of Lord Longdale in *Bennett* v. *Merriman,* 6 Beavan, 360, and Lord Justice Knight Bruce in *McGreggon* v. *McGreggon,* 2 Call., 192, and in Kirkman's Trusts, 3 DeG. & J., 558.

But in favor of the contrary construction—that which gave to the child a vested interest at its birth—was the authority of the late V. C. Shadwell in *Lyon* v. *Coward,* 15 Lim., 287; of the late V. C. Parker in *Barker* v. *Barker,* 5 DeG. & S., 753; of V. C. Stuart and L. J. Turner. And the Lord Chancellor was of the opinion, and it was so decided by the House of Lords, that Augusta Mary Martin took a vested interest in one-fourth of the residuary estate of the testator. The case was regarded, however, as one of so great nicety that the costs were decreed out of the testator's estate, the word "issue" being construed to mean children, and the gift to the children was held not to be substitutional, but an original gift. Lord Chelmsford observing: "It is not to the nephews and nieces absolutely, and, in the event of their dying in the life time of the tenant for life, then to their children; but to such of the nephews and nieces as shall be living at the death of the tenant for life, and to the children of such as shall then be dead, leav-

ing children. The share which the children were to take could never have vested in their parents, because it is only in the event of the parents not having become entitled to them that they are given to the children. This distinction between original and substitutional gifts may furnish some aid to the construction of the will. When a gift is substitutional, it may much more easily be presumed that a contingency on which the original gift depends, is intended to be applied to the gift which comes in its place, than in the case of two independent gifts."

The case of *Austin's Adm'r* v. *Bristol*, 40 Conn. Rep., 120, is a case somewhat similar to the one at bar, the grandchild in that case surviving the father (who predeceased the testator), and then died before the tenant for life. In that case it was held that the grandchild took an immediate vested interest under the will, and that her administrator was entitled, after the death of the widow, to one-fifth of the estate; citing *Martin* v. *Holgate, supra,* and the subsequent case of *In re* Orton's Trust, reported in Law Rep., 3 Eq. Cas., 374. And the case was decided upon the weight of authority, the judges expressing some hesitation in the matter.

We see no defect in the reason of the rule that if futurity is attached to a gift, which postpones the substance of the gift, the vesting is suspended, because the will so provides, and the intention of the testator must be given effect; but if futurity is not expressly attached to the substance of the gift, it is by presumption only that it can be so annexed, and there is no reason to presume it in the case of one gift because it is annexed to another independent gift, and it is more reasonable to presume that the testator expressed his intention than that it was omitted.

The taking of the children is expressly postponed to the death of their mother, and the gift is then to such as survive her; but the gift is simply to the issue of such as may be dead, this being a gift to the issue not of what the father took under

·the will, but of what he could not take, and because he could not take it under the ·contingency; and the issue took not by substitution, but an original gift, to which no condition of survivorship of the life tenant is annexed by the testator.

The decrees of the circuit court appealed from, so deciding, we think they are right, and they must be affirmed.

FAUNTLEROY, J., dissented.

DECREE AFFIRMED.